448 So.2d 725 (1984)
STATE of Louisiana
v.
Tyronne L. JACK.
No. 83-KA-594.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*726 William C. Credo, III, Asst. Dist. Atty., Gretna, for appellee.
Martha E. Sassone, Indigent Defender Bd., Gretna, for appellant.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
Tyronne L. Jack was charged with violating Louisiana Revised Statute 14:64 (armed robbery). He was tried by a jury and found guilty of armed robbery. Thereafter, a pre-sentence investigation was ordered. At the sentencing hearing, the trial judge sentenced the defendant to 99 years at hard labor without benefit of parole, probation or suspension of sentence. From this conviction and sentence, defendant appeals. We affirm.
On the afternoon of August 8, 1982, a young girl, who was employed at a snowball stand, was approached by a young male. She narrated the events as follows:
A man rode his bike up to the snowball stand and came up and asked for the smallest size snowball that we had. And I told him that it was a 40¢. And he said he only had 37¢. So I told him I'd give him the money to buy the snowball.
And I went and put the money in the money box, and then I made the snowball. And when I was reaching for a straw he pulled out a gun and cocked it and told me to give him the money. So I walked over to the money box. And he said give him the tray. So I took the tray out of the money box and set it on the counter top. And he started taking money out of it. And he said bring the money box because he knew there was money in it. So I walked back and pulled out the twenty ($20) dollar bill that was in the box and said that this was all there is, and handed it to him. And he told me to bring him the money box. So I did. And he pulled out a bank bag full of a dollar's worth of pennies and put it in his pocket. And took some more money out of the tray. And right about then a police car drove by and pulled into the parking lot. And he got on his bike ... I guess he saw him because he got on his bike and took off.
And the policeman pulled up and told mehe asked me if I was alright. And I told him I was just robbed. And he took off after the guy...
Deputy Michael Travis testified while he was traveling on Jefferson Highway on a routine patrol he observed a man standing near the window of the snowball stand in question. Because something about the situation attracted his attention, he made a U-turn to pass the stand again. At that moment, he observed the man had a pistol. To prevent any injury to the victim, he pulled into a parking lot to the rear of the stand and allowed the man to flee. After ascertaining the victim of the robbery was uninjured, the deputy gave chase. Approximately *727 eight blocks from the stand, the deputy confronted the robber and ordered him to stop. The man dropped his bicycle, turned on the deputy, and drew a gun. The deputy also drew his revolver and ordered the man to stop. The suspect threw his gun to the ground and fled. Thereafter, the deputy pursued the individual, but lost sight of him. Other officers continued the chase and eventually arrested defendant. After he was identified by the victim as the perpetrator of the armed robbery, he was transported and booked. Thereafter, prosecution for armed robbery ensued.
Pursuant to Louisiana Code of Criminal Procedure article 844, defendant designated one error:
(1) The trial court committed reversible error in sentencing the defendant to a term of ninety-nine (99) years without benefit of parole, probation or suspension of sentence, which sentence is excessive and violates Article I, § 20 of the Louisiana Constitution of 1974 and fails to comply with Louisiana Code of Criminal Procedure article 894.1.
However, in a supplemental brief filed the day of oral argument, two additional errors were presented:
(2) The trial court committed reversible error in denying the defense motion to suppress the evidence and
(3) The trial court committed reversible error in denying the defense motion to suppress the identification.
ASSIGNMENT OF ERROR NUMBER ONE
Two issues are presented by this assignment:
(1) Whether the trial court complied with Louisiana Code of Criminal Procedure article 894.1?
(2) Whether the defendant's sentence of ninety-nine (99) years at hard labor without benefit of parole, probation or suspension of sentence is excessive punishment in violation of Louisiana Constitution Article I, § 20?
Addressing the initial issue as to whether the trial court complied with Louisiana Code of Criminal Procedure article 894.1, we note this article requires the sentencing judge to state for the record the considerations taken into account and the factual basis therefor in imposing sentence. The purpose of this statute is to guide and assist the trial court in the exercise of its broad discretion regarding the imposition of a fair and proper sentence in a particular case by adapting the sentence to the offender as well as to the offense. State v. Jackson, 360 So.2d 842, 843-44 (La.1978). Further, the articulation of these factors considered in imposing a sentence facilities the review by this court to assure sentences imposed are not arbitrary or based on impermissible factors. State v. Douglas, 389 So.2d 1263, 1266, 1267 (La.1980).
The record reflects the trial judge, in articulating his reasons for the sentence imposed, made extensive reference to the lengthy juvenile record of the defendant. Our Louisiana Supreme Court in State v. Tucker, 354 So.2d 521, 525 (La.1978) noted such an open court disclosure of a juvenile record "may have been improper ..." However, the trial court may properly consider such offenses in determining the appropriate sentence to impose. Louisiana Code of Criminal Procedure articles 875 and 894.1.
In addition, the trial judge noted the defendant had a tenth-grade education, was in good mental and physical health, but had been employed only sporadically. The court further emphasized the defendant's adult record, which included one conviction for theft; one felony conviction for burglary; and the armed robbery in question. Also, as a major, the defendant had arrests on armed robbery and burglary charges.
It is also apparent the trial judge was aware of mitigating factors. During the sentencing hearing, defense counsel pointed out the recovered gun was inoperable and unloaded. In addition, defense counsel stated, as a mitigating factor, the defendant's age at the time of the crime. The defendant was 20 years old.
*728 While the trial judge need not recite the entire article 894.1 checklist of aggravating and mitigating factors, the record must reflect that the judge adequately considered the guidelines. State v. Soco, 441 So.2d 719, 720 (La.1983). From the trial judge's colloquy, we find adequate compliance with Louisiana Code of Criminal Procedure article 894.1.
In reference to the issue of excessive sentence, our jurisprudence explains a sentence is excessive if it is grossly out of proportion to the severity of the crime, or is nothing more than a purposeless and needless imposition of pain and suffering. State v. Telsee, 425 So.2d 1251, 1253 (La. 1983); State v. Sims, 410 So.2d 1082, 1084 (La.1982). Where the trial court, as in this case, has complied with article 894.1 by stating the individual considerations and factual basis for imposing sentence, our appellate review will focus on whether the trial judge has abused his sentencing discretion. See State v. Finley, 432 So.2d 243, 245 (La.1983); State v. Tompkins, 429 So.2d 1385, 1388 (La.1983).
Three factors, examined in light of the criteria provided in article 894.1, are essential considerations in any review for an abuse of the trial court's discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. Telsee, 425 So.2d 1251, 1253-54.
THE NATURE OF THE CRIME
This was an armed robbery by a man in his early twenties, during the daytime, of a snowball stand in Jefferson Parish. The victim was a fourteen-year old girl. Jack rode up to the snowball stand on his bicycle and, after asking a few questions, he pulled a gun, cocked the hammer, and pointed it in the direction of the victim. Thereafter, he rode away from the snowball stand after taking all the monies from the stand, which amounted to approximately $35. It was later determined the gun was inoperable; however, the record reflects both the victim and the officer giving chase believed the weapon to be loaded and operable and both were placed in fear of receiving bodily harm by the defendant's display of the weapon during the course of the robbery. Under these circumstances, any witness to the robbery and the defendant's subsequent flight could have attempted, by the use of a gun or other weapon, to disarm the defendant. As a result of such intervention, death or great bodily harm could have been inflicted on the victim, a witness, a bystander, or the defendant himself.
THE NATURE AND BACKGROUND OF THE OFFENDER
As the trial court noted, this defendant has an extensive and serious juvenile record. As an adult, beginning with May 1979, defendant has been arrested for various crimes. In February 1980, he was convicted of theft, but his sentence was suspended. In November 1981, he plead guilty to simple burglary. The trial court indicated that Jack had been shown leniency for all previous crimes committed as a juvenile and as an adult. From the defendant's record, the trial court concluded it was only a matter of time before he would use a weapon to kill someone.
THE SENTENCES IMPOSED FOR SIMILAR CRIMES BY THE SAME COURT AND OTHER COURTS
A survey of relatively recent armed robbery cases decided by the Louisiana Supreme Court reveals a range of sentences between 12 and 99 years. In State v. Douglas, 389 So.2d 1263 (La.1980), the trial court sentenced the defendant to 99 years at hard labor without benefit of parole, probation, or suspension of sentence. The Supreme Court upheld the sentence. In Douglas, the victim was robbed after he responded to a knock at his front door. The assailant pushed a gun into his stomach and entered the house. The robber took $1100 in cash. As the robber fled, he stated, "If you come out, you're dead." The Supreme Court stated the armed invasion of the victim's home at night presents an especially terrifying scene in this particular case. The defendant's criminal history *729 in Douglas reflected three prior felony convictions (two for simple burglary and one for possession of heroin).
Recently, the Supreme Court upheld as not excessive a sentence of 50 years for armed robbery in State v. Joseph, 437 So.2d 280 (La.1983) (handed down September 2, 1983). In the Joseph case, the Supreme Court noted the defendant had three prior felony convictions and under Louisiana Revised Statute 15:529.1 Joseph was subject to imprisonment for life due to his three prior felonies. The court stated, "The sentence does not appear facially excessive..."
In State v. Smith, 433 So.2d 688 (La. 1983) (handed down May 23, 1983), the Supreme Court affirmed a 60-year sentence for an armed robbery of a bank. The Surpreme Court noted the defendant was the planner and organizing force in the robbery in which victims were threatened and shots were fired. The defendant also had a substantial criminal past.
On May 23, 1983, the same date the Supreme Court decided State v. Smith, the Supreme Court upheld another armed robbery sentence in State v. Square, 433 So.2d 104 (La.1983). In the Square case, the defendant robbed a bank and was given a 25-year sentence. Although the defendant was 22 years old, was gainfully employed, lacked a prior criminal record, and there was an absence of personal injury to the victims of the robbery, Justice Watson, writing for the court, stated a 25-year sentence for armed robbery is not "apparently" excessive. Square, 433 So.2d 104, 110.
Since our legislature has conferred criminal jurisdiction upon our appellate courts as of July 1, 1982, our sampling of Louisiana appellate circuits including this circuit reveals a range of sentences between 10 and 99 years. State v. Bridges, 444 So.2d 721 (La.App. 5th Cir.1984) (25 years); State v. England, 442 So.2d 1199 (La.App. 5th Cir.1983) (50 years); State v. Bell, 438 So.2d 636 (La.App. 2d Cir.1983) (10 years); State v. Carter, 436 So.2d 652 (La.App. 3d Cir.1983) (50 years); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983) (30 years); State v. Gray, 434 So.2d 447 (La. App. 2d Cir.1983) (20 years); State v. James, 431 So.2d 1075 (La.App. 2d Cir.1983) (99 years); State v. Guidroz, 432 So.2d 348 (La.App. 1st Cir.1983) (10 years); State v. Taylor, 430 So.2d 686 (La.App. 2d Cir.1983) (2 consecutive 30 year sentences); State v. Lawry, 430 So.2d 153 (La.App. 2d Cir.1983) (40 years); State v. Simone, 428 So.2d 1226 (La.App. 3d Cir.1983) (15 years); State v. Gremillion, 428 So.2d 940 (La.App. 1st Cir. 1983) (60 years); State v. Toussaint, 429 So.2d 206 (La.App. 1st Cir.1983) (12 years); State v. Small, 427 So.2d 1254 (La.App. 2d Cir.1983) (45 years).
ANALYSIS
Our review of the sentencing colloquy has revealed the trial judge gave adequate consideration to the sentencing factors set out in article 894.1. A pre-sentence investigation was ordered, and the trial judge explained in detail his decision to impose the maximum sentence. He noted the defendant's youth, his extensive juvenile record, along with his adult record. In addition, the trial court noted this defendant has already violated numerous opportunities for rehabilitation and has consistently manifested a propensity for felonious behavior.
As stated in State v. Douglas, which this court adopts:
This court does not lightly consider the matter of a 99-year sentence imposed without hope of release on parole. There may be sound arguments against the frequent use of such sentences, but these arguments address themselves to the reasoned discretion of the sentencing judge. The function of the reviewing court is not merely to substitute this court's judgment for that of the trial judge, but to determine whether the court below manifestly abused its discretion. Douglas, 389 So. 1263, 1267-68. (Emphasis added)
In the present case, the trial court was influenced by the defendant's prior extensive criminal record both as a juvenile and as an adult. The court stated it felt the defendant had an inclination to continue to *730 pursue a criminal career. Considering these factors, we cannot say there was an abuse of discretion in the imposition of this sentence.
ASSIGNMENTS OF ERRORS NUMBER TWO AND THREE
These two assignments of error were never lodged in the trial court pursuant to Louisiana Code of Criminal Procedure article 844, nor did the trial court extend the return date. See Louisiana Code of Criminal Procedure article 916(5). Instead, these assignments were filed in this court the day of oral argument of this case. Louisiana Code of Criminal Procedure article 920 entitled "Scope of appellate review" provides:
The following matters and no others shall be considered on appeal:
(1) An appeal designated in the assignment of error; and
(2) An error that is discoverable by a mere inspection of the pleadings.
This circuit has recently considered the issue of assignments of error lodged only in this court. In State v. Sonnier, 441 So.2d 359, 360-61 (La.App. 5th Cir.1983), no assignments of error were lodged in the trial court. Instead, the defense counsel incorporated one assignment of error in the appellate brief. Noting Louisiana Code of Criminal Procedure articles 844 and 920, the court stated the issue of excessiveness of sentence was not properly before the court but considered it nonetheless and found the argument presented was without merit. In State v. Bridges, 444 So.2d 721, 725 (La.App. 5th Cir.1984), the court declined to address an assignment of error which was not lodged with the trial court pursuant to Louisiana Code of Criminal Procedure article 844 and which was not patent. In State v. Duperon, 448 So.2d 720, (La.App. 5th Cir.1984), by this author and handed down this same day, this court, while carefully reviewing the record, did not discuss the merits of the improperly lodged assignment of error. Moreover, the Louisiana Supreme Court in State v. Spell, 399 So.2d 551, 557 (La.1981) and State v. Marrero, 363 So.2d 494, 497 (La.1978) refused to address assignments of error not properly designated pursuant to Louisiana Code of Criminal Procedure article 844. Both cases cited Louisiana Code of Criminal Procedure article 920 as a basis of their declining to address these assignments of error.
Despite the improper procedure utilized to present these two assignments of error, this court has carefully reviewed the record. Accordingly, Assignment of Error Number Two is without merit.
In reference to Assignment of Error Number Three, not only was this assignment not designated properly pursuant to Louisiana Code of Criminal Procedure article 844, the issue of the identification procedure, which this assignment of error questions, was not properly presented to the trial court.
Defendant contends the infield identification of him by the victim was impermissibly suggestive and should have been suppressed by the trial court. Our review of the record indicates defendant filed a "Motion to Suppress Evidence" in which the defendant stated:
... that the evidence to be used against the defendant has been unlawfully and illegally obtained and that the defendant moves that this evidence be suppressed in any criminal proceedings against him for the following reasons, to-wit:
1. That the evidence to be used against the defendant whether physical evidence or any form of statement or confession was not seized or obtained incidental to a valid arrest and/or search;
2. That the evidence to be used against the defendant was seized or obtained as a result of an unlawful search without a valid warrant and without probable cause.
At the hearing on the motion to suppress, trial counsel did not specifically argue, as does counsel on appeal, that the identification of defendant by the victim was so impermissibly tainted as to be suppressed as unreliable, nor was a "Motion to Suppress Identification" filed. Instead, *731 counsel, when questioned by the trial court concerning what was included in the motion to suppress, stated, "evidence, I.D.," but when further requested by the trial court to outline the scope of the motion to suppress, defense counsel merely reiterated the above-quoted grounds. Thus, the trial court was presented the opportunity to rule only on the arrest and search issue; suppression of the identification by the victim was never formally before it. Since defendant's motion to suppress did not include the identification, the trial court ruled only on the arrest and search issue, and defense counsel failed to amend his pleadings or specifically object to the exclusion of the identification issue at the hearing on the motion to suppress, this court will not address the admissibility of the victim's identification of the defendant. The law is well established that a new ground for objection cannot be presented for the first time on appeal. State v. Cressy, 440 So.2d 141, 142-43 (La.1983).
For the above reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.