710 So.2d 814 (1998)
STATE of Louisiana
v.
Alicia Lynn ERNEST.
No. 97 KA 0335.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*815 Terry M. Boudreaux, Gretna, Richard P. Ieyoub, Attorney General, Frederick A. Duhy, Jr., Assistant Attorney General, Louisiana Department of Justice, Baton Rouge, for Plaintiff/Appellee State.
Frank Sloan, Covington, for Defendant/Appellant Alicia Lynn Ernest.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
Defendant, Alicia Lynn Ernest, was charged by bill of information with cruelty to a juvenile, a violation of La.R.S. 14:93. Defendant withdrew her initial plea of not guilty and pled guilty as charged.[1] There was no agreement as to the sentence in this case. The penalty for cruelty to a juvenile is a fine of not more than one thousand dollars, imprisonment with or without hard labor for not more than ten years, or both. La.R.S. 14:93(D).
The court sentenced defendant to imprisonment at hard labor for four years. Defendant filed a motion to reconsider sentence, which was denied. Defendant appeals, filing one assignment of error in which she contends that the trial court erred by imposing an excessive sentence.
The following facts of the offense are taken from the Boykin hearing, the sentencing hearing, and the presentence investigation (PSI) report. On October 15, 1995, defendant was babysitting the victim, a five and one-half month old girl. The victim began crying and defendant forcibly jammed a baby bottle into her mouth, cutting her lip. Defendant then slammed the victim onto a changing table, causing a three to four inch fracture to the victim's skull. Because the victim continued to cry, defendant picked her up and shook her. The victim recovered from her injuries.
Defendant contends her sentence is excessive because she is a first offender with no criminal record, she has a child who was two at the time of sentencing, she received counseling after the offense and was continuing to do so, she had been gainfully employed and functioning well for over a year after the offense, and she was remorseful. Defendant also stated that she was of limited intelligence and had inadequate coping skills at the time of the offense. Defendant contends in brief that the offense was not premeditated, that the victim sustained no permanent injury, and that she was unlikely to commit another crime.
During the sentencing hearing, defense counsel informed the court that defendant's family got her involved in counseling after the offense, that defendant had a two year old child and no prior criminal record, that defendant had had no further problems since the offense, and that she was gainfully employed and functioning well. Defendant apologized to the court for what she had done to the victim.
The court gave its reasons for the sentence, stating that it had reviewed the PSI report, wherein the probation and parole *816 agent who interviewed defendant for the PSI report had the impression that she had no remorse and was highly resentful of the victim's parents, whom she considered to be powerful and affluent. The court commented that defendant believed the victim's parents "robbed her of being a mother to her own child. Rather than build up resentment the thing she should have done was quit work." The trial court considered the report of defendant's counselor, who concluded that the excessive hours defendant worked and her feelings of intimidation as to the victim's parents "formulated a pressure cooker dynamic" that culminated in the present offense. The court observed that, in looking at the factors under La.Code Crim.P. art. 894.1, defendant manifested deliberate cruelty to the victim during the commission of the offense. The court noted that defendant knew that the victim was vulnerable and incapable of resistance due to her age. According to the court, defendant used her position as a sitter to facilitate the offense. The court found that defendant's criminal conduct threatened serious harm to the victim. The court remarked, "For a five and one half month old infant the slamming of the child's head to the changing table, the shaking of the child could have killed this child. Ms. Ernest is in a way fortunate. She could be here on a murder charge." The court commented that there was no justification for defendant's conduct and found it to be heinous and inexcusable. The court concluded that a lesser sentence would deprecate the seriousness of the offense and that defendant was in need of a custodial environment.
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
A thorough review of the record establishes the defendant's sentence is not excessive. In particular, we note the trial court's reasoning that the defendant's actions could have killed the victim. Additionally, the court's reasons show that it fully considered the mitigating factors urged by defendant in brief. Defendant's assignment of error lacks merit. Therefore, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Defendant pled guilty to the present offense pursuant to an agreement whereby the State agreed to hold in abeyance a bill of information charging defendant with second degree battery arising out of the same incident.