860 So.2d 151 (2003)
STATE of Louisiana
v.
Julian CHACON.
No. 03-KA-0446.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Julian Chacon, appeals his conviction and sentence on a charge of cruelty to a juvenile in violation of LSA-R.S. *152 14:93. For reasons that follow, we affirm the conviction and sentence.
The record shows that defendant was charged, by bill of information filed on November 7, 2001, with cruelty to a juvenile. He pled not guilty and proceeded to a bench trial on May 7, 2002, after which he was found guilty as charged. Defendant was subsequently sentenced to two years at hard labor.

FACTS
On Saturday, May 19, 2001, C.P., age eight, had a skating party for his birthday.[1] At the party, defendant, C.P.'s mother's live-in boyfriend, gave C.P. quarters to play video games. After the party, C.P.'s mother had to go to work and defendant had to go to a meeting so defendant took C.P. to a babysitter. Later that night after his meeting, defendant picked up C.P. from the babysitter. C.P.'s mother came home later that night and noticed a bruise on C.P.'s arm. She assumed C.P. got the bruise from the skating party because he fell down so much. When C.P. went to school on Monday, his teacher noticed the bruise and took him to the principal's office. C.P. told the principal that his cousin gave him the bruise at the skating party. The principal did not believe C.P. and eventually called the police.
Detective Shane Tilford responded to the call at the school. He met with C.P. who told him that defendant punched him several times after he spilled quarters while walking to defendant's truck. According to Detective Tilford, C.P. stated that defendant was very angry and was yelling when he punched C.P. C.P.'s mother and defendant were both called to the school.
According to defendant, C.P. was carrying a little bucket with thirty to forty dollars of quarters left over from the money defendant had given C.P. at the skating rink. C.P. jumped into the truck spilling the quarters everywhere. Defendant asked C.P. to pick up the quarters. When C.P. did not obey, defendant leaned over the driver's seat and hit C.P. in the arm. Defendant explained he was trying to get C.P.'s attention and did not hit him hard.
C.P. testified defendant punched him twice in the left arm with a closed fist. C.P. initially stated defendant punched him after expressing frustration because C.P. spent all the money defendant gave him earlier. Later, C.P. testified that defendant struck him because he dropped the remaining quarters. C.P. stated the punches did not hurt that much and that he did not cry.
Defendant was arrested at the school and advised of his rights. Prior to being transported to the police station, defendant admitted to Detective Tilford that he had hit C.P. in the arm. Defendant subsequently gave a recorded statement at the police station where he stated he merely gave C.P. a "pinch to grow an inch and a sock to grow a bock" at the skating rink out of fun. He denied hitting C.P. over the dropped quarters. At trial, defendant testified that he lied when he gave his recorded statement because he was scared.

LAW
In his only assignment to this court, defendant argues the evidence was insufficient to support his conviction for cruelty to a juvenile. Specifically, defendant contends that the evidence did not prove he intended to mistreat C.P., or cause him unjustifiable pain and/or suffering. He *153 also asserts his conduct was justified as being reasonable discipline of a minor by a parent. Defendant admits he is not C.P.'s biological father, but maintains he acts as a father figure to C.P.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Defendant was convicted of cruelty to a juvenile, which is defined in LSA-R.S. 14:93 as "the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child." The term "intentional" refers to general criminal intent to mistreat or neglect and does not require an intent to cause the child unjustifiable pain and suffering. State v. Schultz, 01-995 (La.App. 5 Cir.4/10/02), 817 So.2d 202, 208, writ denied, 02-1320 (La.11/27/02), 831 So.2d 270. General criminal intent is "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." LSA-R.S. 14:10(2); Id.
An alternative to proving defendant had general criminal intent to mistreat or neglect the child thereby causing the child unjustifiable pain and suffering is to prove that defendant was criminally negligent in his mistreatment or neglect of the child. Criminal negligence "exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." LSA-R.S. 14:12; State v. Jackson, 98-1254 (La.App. 5 Cir. 3/30/99), 733 So.2d 657, 661. Criminal negligence is essentially a negative. Rather than requiring the accused intended the consequences of his actions, criminal negligence is found from the accused's gross disregard for the consequences of his actions. Id.
Thus, to carry its burden of proof the State must show that defendant either intentionally mistreated or neglected C.P. or was criminally negligent in his mistreatment or neglect of C.P. Mistreatment is equated with "abuse" and has a commonly understood meaning. State v. Comeaux, 319 So.2d 897, 899 (La.1975).
It is undisputed that defendant hit C.P. in the left arm. Defendant testified that he was 5'4" and weighed 145-150 pounds. The photographs taken two days after the incident show a large dark bruise on C.P.'s upper left arm. The bruise resembles a paw print with a circular bottom and four small circles, one for each knuckle of a closed fist, in a horizontal line above the larger circle.
Defendant argues he did not have any intent to mistreat C.P. He claims he was not angry when he hit C.P., that he was in control and that he only hit C.P. twice. He maintains the blows were not severe as C.P. did not cry and was not thrown into the door by the impact of the punches. Defendant asserts his conduct was justified as reasonable discipline.
Justification can be claimed when the conduct is "reasonable discipline of minors by their parents, tutors or teachers." LSA-R.S. 14:18(4); State v. Comeaux, 319 So.2d at 899. However, defendant can not avail himself of this statute. There is no *154 evidence that defendant was the father, tutor or teacher of C.P. Rather, the record only establishes that defendant was C.P.'s mother's live-in boyfriend.
Thus, the issue is whether defendant had the intent to mistreat C.P. or was criminally negligent in his mistreatment of C.P. Defendant, age 47, intentionally punched C.P., age eight, with a closed fist twice simply because C.P. dropped some quarters. The force of the blow left a severe bruise on C.P.'s arm in the shape of a fist. The trial judge specifically found that, "prints upon this child's arm appear to be that of a fist." The mere fact C.P. testified that he did not cry when defendant struck him or the fact he was not thrown off balance from the force of the blows is not determinative of whether C.P. suffered unjustifiable pain and suffering. A bruise of the severity and magnitude exhibited by the photographs clearly demonstrates that unjustifiable pain and suffering were inflicted upon C.P.
Viewing the evidence in a light most favorable to the prosecution, the record clearly supports a finding that defendant either intentionally mistreated or was criminally negligent in his mistreatment of C.P. when defendant chose to administer two punches to an eight-year-old boy with such force that it left a fist-shaped bruise. Thus, we find no merit in defendant's argument.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The victim's initials are used under the authority of LSA-R.S. 46:1844 which allows the courts to identify a crime victim who is a minor by using his or her initials to protect the victim's identity.